IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIAROSARIO CASTELLANOS,
as natural mother and next friend of her children,
PABLO CASTELLANOS and
PEDRO CASTELLANOS,

       Plaintiffs,

vs.                                                                             No. CIV 00-0036 JC/RLP

ROBIN OTTEN, Secretary Designate
of the New Mexico Human Services
Department, in her official capacity,
and CIMARRON HEALTH PLAN, INC.
d/b/a CIMARRON SALUD,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Plaintiff's Motion for Attorney's Fees and Memorandum in Support Thereof, filed June 8, 2001 *(Doc. 75)*, and Plaintiff's Motion for Relief as to Count I Pursuant to Rule 60(b)(6) and For Entry of Judgment Pursuant to the Court's Ruling on June 1, 2000, filed June 5, 2001 *(Doc. 72)*. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Plaintiff's motions are not well taken and will be denied.

**I.**     **Background**

Plaintiff Mariarosario Castellanos is the natural mother of Pablo and Pedro Castellanos, identical twins diagnosed with autism. As Medicaid recipients, the boys obtained their medical services from Defendant Cimarron Health Plan (d/b/a Cimarron Salud). Defendant Cimarron entered

into a contract with Defendant New Mexico Human Services Department ("HSD") to furnish necessary medical services for eligible Medicaid recipients such as the Plaintiffs. In turn, Defendant HSD was responsible for providing a state-wide managed care system for Medicaid recipients.

In 1999, Ms. Castellanos claimed that the mental health providers involved in her sons' treatments determined that the long-term treatment goal was a residential setting that specialized in treating autism. In order to receive such treatment for her children, Ms. Castellanos needed to make a formal request with Defendant Cimarron. Ms. Castellanos sought the assistance of an advocacy group called Parents of Behaviorally Different Children ("PBDC") to assist with her request to Defendant Cimarron.

On September 10, 1999, PBDC advocates sent a letter on behalf of Ms. Castellanos to Aspen Behavioral Health ("Aspen") requesting placement of her sons in an out-of-state residential facility. Aspen, a subcontractor and agent of Defendant Cimarron, denied the request. Plaintiff formally appealed the denial of services in a letter dated September 22, 1999, and Aspen subsequently denied the appeal. On October 5, 1999, Plaintiff sought an expedited appeal by way of Defendant Cimarron's grievance process. An Appeals Specialist for Defendant Cimarron ruled against Plaintiff in a letter dated October 11, 1999.

On January 10, 2000, Plaintiff brought suit against Defendants for declaratory and injunctive relief claiming: (1) failure to provide medically necessary services as required by the Medicaid Act (Count I); (2) violation of the Americans with Disabilities Act (Count II); (3) failure to comply with Title VI of the Civil Rights Act of 1964 (Count III); and (4) violations of the Procedural Due Process Clause of the Fourteenth Amendment (Count IV). *See* Complaint for Declaratory and Injunctive Relief at 16-19, filed January 10, 2000 *(Doc. 1)*. In addition, Plaintiff filed a motion for a temporary

restraining order ("TRO") and for a preliminary injunction asking the Court to prevent the denial of medically necessary services to Pablo and Pedro.  *See* Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum in Support, filed January 10, 2000 *(Doc. 2)*.  A TRO hearing was held on January 12, 2000, and later subsumed into a preliminary injunction hearing on January 21 and 24, 2000.  During the hearing, one of the issues the Court addressed was Plaintiff's decision not to pursue the fair hearing procedures before Defendant HSD.  The Court advised Plaintiff to seek administrative review before Defendant HSD but did not issue an order to this effect. *See* Exhibit A, attached to Defendant Cimarron Health Plan, Inc.'s Response in Opposition to Plaintiff's Motion for Attorney's Fees, filed June 8, 2001 *(Doc. 76)*.  Rather, the Court ordered the denial of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum in Support, finding that Plaintiff failed to establish an irreparable injury.  *See* Order, filed January 26, 2000 *(Doc. 15)*.

Plaintiff chose to pursue the fair hearing procedures before Defendant HSD, and a hearing was held on March 1, 2000, before Ross Becker, Acting Director of the Medical Assistance Division. On April 12, 2000, Mr. Becker entered a "Hearing Decision" reversing Defendant Cimarron's denial of Plaintiff's request for placement at a residential treatment facility.

In the months to follow, Plaintiff maintains that Defendants ignored the clear import of the administrative decision and delayed the placement of Pablo and Pedro in a residential treatment facility.  However, Defendants maintain that they worked diligently to comply with the hearing decision.

On June 1, 2000, the Court held a status conference.  Plaintiff claims that the Court ordered Defendants to take all steps necessary to immediately place Pedro at the Brown School and Pablo at

3

the Children's Psychiatric Hospital. The Defendants deny that such an order was ever issued by the Court.

On February 8, 2001, the parties submitted a joint status letter to the Court. The parties concurred on the following information: (1) Pedro was receiving residential care at the Brown School and Pablo was a patient at the Children's Psychiatric Hospital; (2) the expenses for the residential treatment of both children were covered by the New Mexico Medicaid fee for service, and Defendant Cimarron was no longer involved; and (3) there were no pending requests for medical treatment other than the care which was being covered. Plaintiff went on to assert the following without the concurrence of Defendants: (1) Counts I and II against Defendant Cimarron were moot because of recent changes in federal regulations independent of this lawsuit, and (2) the relief sought under Counts I and II against Defendant HSD had been provided. Counts III and IV remained in dispute.

On March 22, 2001, the Court entered Memorandum Opinion and Order *(Doc. 69)*. Based upon the joint status letter, the Court found that the claims raised in Counts I and II were moot, and ordered that Defendant Robin Otten's Motion to Dismiss or in the Alternative to Stay Proceedings be granted with respect to Counts I and II. The Court went on to determine that Plaintiff failed to produce evidence to show that she was denied the opportunity to participate in the administrative medical decision of the children because of the alleged defective notices in Spanish. Finally, the Court determined that the Spanish notices did not pose any due process problems for the Plaintiff as she proceeded through the administrative hearings. Accordingly, the Court ordered that Defendant Otten's Motion for Summary Judgment on Plaintiff's Deficient Notice Claims be granted with respect to Counts III and IV.

Plaintiff now moves the Court for an order declaring that Plaintiff was the prevailing party on Counts I and II for purposes of recovering attorney's fees. *See* Plaintiff's Motion for Attorney's Fees and Memorandum in Support Thereof, (Pl's Motion for Atty's Fees) filed June 8, 2001 *(Doc. 75)*. In addition, Plaintiff moves the Court for an order setting aside the ruling on Count I and for the entry of an order on Count I setting forth the Court's oral statement at the status conference on June 1, 2000.

## II.     Analysis

### A.     Motion to Strike Exhibit "A" from Defendant Otten's Response Brief

New Mexico District Court Local Rule 10.5 states that exhibits cannot exceed fifty pages. Clearly, nine and a half pages, whether single, double or triple columns does not merit a detailed analysis of whether it exceeds the stated page limit. Therefore, Plaintiff's Motion to Strike Exhibit "A" to Defendant Otten's Response and Memorandum in Support is denied.

### B.     Plaintiff's Motion for Attorney's Fees

Traditionally, in the United States, parties to a lawsuit are required to pay their own attorney's fees, regardless of the outcome. Characteristically, this rule became known as the "American Rule." *See* A*lyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). To diminish the harshness of this rule, Congress has enacted numerous statutes that allow the court to award attorney's fees to the prevailing party. Such statutes include the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988; and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 42 § 12101 *et seq*. In the present case, Plaintiff is seeking attorney's fees under 42 U.S.C. §§ 1988 and 12205. In both statutes, the plaintiff must be a prevailing party in order for attorney's fees to be awarded.

Prevailing party is defined as "[a] party in whose favor a judgment is rendered, regardless of

5

the amount of damages awarded." BLACK'S LAW DICTIONARY 1145 (7th ed. 1999). The legislative history of 42 U.S.C. § 1988 enunciates Congress' intent that the prevailing party only be awarded its attorney's fees if the party "prevailed on the merits of at least some of its claims." *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980). The Supreme Court held that a nominal award is sufficient for a party to be deemed a prevailing party, so long as the award is based on the merits of the cause of action. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992). Additionally, the Supreme Court ruled that settlement agreements enforced via consent decrees also allow for attorney's fees. *See Maher v. Gagne*, 448 U.S. 122, 129-130 (1980). Accordingly, only enforceable judgments on the merits and consent decrees establish the "material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon Bd. and Care Home v. West Virginia Dep't of Health and Human Servs.,* 121 S.Ct. 1835, 1840 (2001) (citations omitted).

Plaintiff initially claimed that the Court's question/comment[1] during the status conference on June 1, 2000, led to Defendant Cimmaron's approval of placement of Pedro in the Brown School. *See* Pl's Motion for Atty's Fees (*Doc. 75)*. Plaintiff argued that due to the timing of Pedro's placement in the Brown School (June 2, 2000), the Court's comment was the catalyst to her son's entry, and therefore she was the prevailing party. In this initial argument, Plaintiff claimed that under the "catalyst theory" nothing further was required to consider her the prevailing party in order to obtain attorney's fees.

### 1.   Catalyst Theory

Under the "catalyst theory," and as adopted by the 10th Circuit, attorney's fees are awarded

---

[1] The primary question at issue was the Court's query, "I think they [Pedro and Pablo] are going to the Brown School, aren't they?"

even when there was no judicially sanctioned change in the legal relationship of the parties. In *Foremaster v. City of St. George,* the court awarded attorney's fees to a civil rights plaintiff solely as the result of defendants' voluntary actions aiding in an improvement in plaintiff's conditions. *See* 882 F.2d 1485, 1488 (10th Cir. 1989). Under the "catalyst theory," therefore, plaintiffs do not have to point to a judicial order in their favor to be awarded attorney's fees.

### 2. The Catalyst Theory Overturned

In a recent Supreme Court decision, the Court overturned the "catalyst theory" holding that it is not a permissible theory for awarding attorney's fees. *See Buckhannon*, 121 S.Ct. at 1840. In the decision, the Court reviewed attorney's fees provisions in two statutes: the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2) and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205. Although these were the only two statutes at issue, the plain language of the Opinion does not limit the Court's ruling to those two statutes, as the opening lines specifically speak to the "[n]umerous federal statutes" that Congress has enacted that include attorney's fees provisions. *Buckhannon*, 121 S.Ct. at 1838. Moreover, the Court also specifically points to other statutes that have attorney's fees provisions, further indicating the Court's intention that its ruling is not limited to the statutes at issue. *Id.* at 1839 (citations omitted).

The Supreme Court reasoned that a defendant's voluntary conduct is not a sufficient basis for awarding attorney's fees, as it "lacks the necessary judicial *imprimatur* on the change." *Id.* at 1840. To be awarded attorney's fees, therefore, a judicially sanctioned alteration in the legal relationship between the parties must occur. *Id.* The Supreme Court went on to write that it can see no reason why federal courts should award attorney's fees to plaintiffs who "by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit... ha[ve] reached the 'sought after destination' without

7

obtaining any judicial relief." *Id.* at 1841 (citations omitted). The Court today, therefore, finds that the "catalyst theory" is no longer applicable.

### 3. Plaintiff's Argument

Upon the Supreme Court's decision in *Buckhannon*, Plaintiff then claimed that the Court's question at the status conference amounted to a "judicial edict" that mandated Defendants to place Pedro at the Brown School. *See* Plaintiff's Reply to Responses Submitted By Defendants, at 1, filed June 8, 2001 (*Doc. 78*). Yet, as the Third Circuit held in *Snow Machines, Inc. v. Hedco, Inc.*, "[t]he operative act of the judge is the order. Even a formal published opinion, to say nothing of a bench opinion and even less of a comment at a conference, is a statement of reasons for the order; it does not supplant the order." 838 F.2d 718, 727 (3rd Cir. 1988). For a court's comments to be binding and enforceable, they must constitute a judicially sanctioned change in the parties' legal relationship. *Buchkannon*, 121 S.Ct at 1840. The oral comment made by the Court at the status conference was neither intended to bind nor direct the Defendant. It was a mere question and nothing more. The Court thus finds that the comment in dispute at the status conference on June 1 did not lead to a "material alteration of the legal relationship of the parties" under the ruling in *Buckhannon* such that attorney's fees would be justified under either 42 U.S.C §§ 1988 or 12205.

### C.     Rule 60(b)(6) Motion

Plaintiff further urges the Court for Rule 60(b)(6) relief setting aside the Court's Order granting Defendant's Motion to Dismiss Count I. Plaintiff also seeks entry of a written order on Count I setting forth the Court's "oral ruling and directives... as rendered at the status conference of June 1, 2000." Pl's Memorandum in Support of its 60(b)(6) Motion, at 1, filed June 5, 2001 (*Doc. # 73*). Plaintiff's motion is not well taken and is denied.

8

In pertinent part, FED. R. CIV. P. 60(b) states:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment.

A Rule 60(b) motion is granted on the sound discretion of the court. *See Caribou Four Corners, Inc.* v. *Truck Insurance Exchange*, 443 F.2d 796, 799 (10th Cir.1971). Such motion gives the court a "grand reservoir of equitable power to do justice in a particular case." *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (en banc) (internal quotations omitted), *cert. denied,* 423 U.S. 1079. Relief, however, under Rule 60(b)(6) should only be granted under extraordinary circumstances. *See Bud Brooks Trucking, Inc. v. Bill Hodges Trucking, Co.,* 909 F.2d 1437, 1440 (10th Cir. 1990).

Extraordinary circumstances include when, after entry of judgment, events not contemplated by the parties or the court render enforcement of the judgment inequitable. *See e.g., Zimmerman v. Quinn*, 744 F. 2d 81, 82-83 (10th Cir. 1984) (upholding 60(b)(6) modification of stipulated judgment to allow a party to escape tax liability for a one year period when both parties expected the money to be transferred within sixty days and it was not transferred for eighteen months); *State v. Gledhill (In Re Gledhill)*, 76 F.3d 1070, 1081 (10th Cir. 1996) (court upholding bankruptcy court's grant of a 60(b)(6) motion due to circumstances of the case changing "significantly since the judgment."). In the present case, the Plaintiff argues that the holding in *Buckhannon* is the event not contemplated by the parties or the Court. *See* Pl's Memorandum in Support of Motion for Relief from Judgment on Count I, at 8, filed June 5, 2001 (*Doc. 73).* The problem with this argument, however, is that regardless of whether the Court followed *Buckhannon* or applied the "catalyst theory," Plaintiff still

9

would not be accorded prevailing party status, for the Court finds that the question at the status conference had no bearing on Pedro's entry into the Brown School. Exhibit 21 confirms that the Brown School anticipated a vacancy for June 1 and another for June 9, 2000. *See* Pl's Motion for Atty's Fees, exhibit 21. The Court's question, therefore, did not bring about a voluntary change in the Defendant's conduct such that Plaintiff would be a prevailing party even under the "catalyst theory." Thus the ruling in *Buckhannon*, although unanticipated by Plaintiff, does not render the judgment inequitable.

Extraordinary relief is appropriate when circumstances are "so unusual or compelling" or when it "offends justice" to deny such relief. *See Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 (10th Cir. 1990). Plaintiff cites *Pierce v. Cook & Co.,* 518 F.2d 720 (10th Cir. 1975) in support of her theory that the Court may grant Rule 60 (b) relief due to a change in relevant case law. *See* Pl's Memorandum in Support of Motion for Relief from Judgment on Count I at 6 (*Doc. 73)*. The present case and *Pierce,* however, vary greatly in their facts and circumstances necessitating the different holdings. In *Pierce*, the court granted a Rule 60(b)(6) motion due to the long-standing rule articulated in *Erie v. Tompkins*, 304 U.S. 64, 74-75 (1938), that in diversity jurisdiction cases federal court rulings should be substantially similar to state court litigation arising out of the same transaction or occurrence. *See Pierce*, 518 F.2d at 723. Yet, in *Pierce*, such similarity did not occur. The court, therefore, held that the divergence constituted an extraordinary situation compelling Rule 60(b)(6) relief. *Id.* at 724. In the present case, Plaintiff's sole basis for Rule 60(b)(6) relief is the overturning of the "catalyst theory" under *Buckhannon*. Yet, as discussed *infra*., a change in law is not a sufficient basis for Rule 60(b)(6) relief.

Plaintiff's theory that the ruling in *Buckhannon* constitutes a change in the law, and therefore

10

its retroactive application to this case would be inequitable, is not well founded in this jurisdiction. *See* Pl's Memorandum in Support of Motion for Relief from Judgment on Count I at 2. Although the Circuits vary regarding whether a change in the law should be the basis for a 60(b) motion, the Tenth Circuit follows the rule articulated in *Collins v. City of Wichita*, holding that "[a] change in the law or in the judicial review of an established rule of law is not such an extraordinary circumstance which justifies such [60(b)(6)] relief." 254 F.2d 837, 839 (10th Cir. 1958). Notably, even those circuits that hold that trial courts may review the impact of a change in law after judgment is entered stop short of allowing all such judgments to be reviewed. "[S]omething more than a 'mere' change in law is necessary to provide the grounds for Rule 60(b)(6) relief." *Ritter v. Smith*, 811 F.2d 1398, 1401, *reh'g denied*, 817 F.2d 761 (11th Cir. 1987), *and cert. denied* 483 U.S. 1010 (1987). Plaintiff's claim that a retroactive application of *Buckhannon* to her case would be inequitable is thus not well founded. Accordingly, Plaintiff's request for an order setting aside the Court's ruling on Count I is denied.

Finally, Plaintiff asks the Court to enter an order reflecting its oral comment at the June 1, 2000 status conference. The Court, however, sees no basis for memorializing into an order a mere question it asked at the status conference. The question was not a judicial edict, a judicial directive nor a judicial ruling; it was simply a non-binding question by the Court.

**IV. CONCLUSION**

For the above reasons, the Court denies Plaintiff's Motion to Strike Exhibit "A." The Court also denies Plaintiff's Motion for Attorney's Fees. The Court finds that the "catalyst theory" is no longer good law. Therefore, under *Buckannon,* Plaintiff is not a prevailing party, as there was no material alteration in the parties' legal status upon a certain question the Court asked at the status

conference. Furthermore, Plaintiff's Motion for Relief as to Count I is also not well taken by the Court, as there is no extraordinary situation justifying Rule 60(b)(6) relief. Finally, the Court finds no justification for entering a written order reflecting its oral statement at the status conference. If everything a court said or asked became the basis for a ruling, our legal system would be immersed in an even greater judicial morass than the one we have today.

Wherefore,

    IT IS ORDERED that Plaintiff Mariaosario Castellanos' Motion to Strike Exhibit "A", filed July 5, 2001 (*Doc. # 82)* is denied.

    IT IS ORDERED that Plaintiff Mariaosario Castellanos' Motion For Attorney's Fees, filed May 1, 2001 (*Doc. 75)* is denied.

    IT IS ORDERED that Plaintiff Mariaosario Castellanos' Motion for Relief as to Count I Pursuant to Rule 60(b)(6) and for Entry of Judgment, filed June 5, 2001 (*Doc. 72)*, is denied.

    DATED October 3, 2001.

                                                                UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Nancy L. Simmons, Esq.
    Albuquerque, New Mexico

    Tara Ford, Esq.
    Albuquerque, New Mexico

    Karen J. Meyers, Esq.
    Aguilar Law Offices, P.C.
    Albuquerque, New Mexico

Counsel for Defendants

William F. Riordan, Esq.
Riordan & Associates
Albuquerque, New Mexico

Patrick J. Rogers, Esq.
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico